FORD *v*. HARRISON.

Opinion delivered March 30, 1901.

JUDGMENTS AND DECREES—LIEN.—While the general lien of a decree continues in force as to the judgment debtor's land only three years from the date of the decree, unless revived, the lien of a mortgage on land, enforced by decree, does not lapse after three years from the date of the decree.

Appeal from Lafayette Circuit Court.

CHAS. W. SMITH, Judge.

STATEMENT BY THE COURT.

R. B. Ford, being the owner of a tract of land in Lafayette county, on March 30, 1889, mortgaged it to Henry Moore to secure a debt due him. This mortgage was duly recorded April 6, 1889. Afterwards on February 6, 1890, Ford conveyed the land to his son, R. F. Ford, by deed which stated the consideration to be $200. The mortgage debt was not paid, and Moore brought suit, and on August 3, 1891, obtained a decree against R. B. and R. F. Ford foreclosing the mortgage, and ordering the land sold for the payment of the debt. The day fixed in the decree for the sale was 14th of December, 1891, but the decree was entered by consent, and contained the following provision: "It is by consent further ordered that, if said defendants, or either of them, shall on or by the 14th day of November, 1891, pay as much as $100 to plaintiff upon the judgment herein rendered, no sale of said lands herein mentioned shall be made before the 14th day of November, 1892, and this cause is continued."

The foreclosure judgment was not paid, and Mrs. E. O. Harrison in September, 1891, recovered a judgment against R. F. Ford before a justice of the peace for $125 and costs. Afterwards on November 22, 1892, a transcript of this judgment was filed in the office of the clerk of the circuit court of Lafayette county, and entered upon the docket for judgments and decrees, and thus became a lien upon the land of R. F. Ford in that county. But R. F. Ford, who now claims the land burdened by the fore-

closure decree and the judgment lien of Mrs. Harrison, sold the land to his brother, M. H. Ford, the consideration expressed in the deed being $325, though it is claimed by Ford that nothing was paid or agreed to be paid, except that he agreed to pay off or purchase the foreclosure decree.    Moore, who owned the foreclosure decree, testified that after the decree was taken R. F. Ford notified him that he could not pay the decree, and that he had turned the land over to his brother, M. H. Ford.    Moore further testified that he thereupon agreed with M. H. Ford that, if he would pay the amount of the decree and all costs connected with it, the decree would be used to perefect his title.    "I explained to him," said Moore, "that he was in fact simply buying the decree that I held against the land.    No credits were entered upon the decree, and it was understood that none were to be entered, but that this decree was to be used to get him a good title to the land." This agreement with M. H. Ford was made only a few months after the decree was entered.    M. H. Ford took possession of the land, and continued from time to time to make payments to Moore under this agreement.    Meantime Mrs. Harrison had caused an execution to be issued on her judgment against R. F. Ford, and to be levied upon the land in controversy as his property.    The land was sold under the execution in June, 1895, and the sheriff executed his deed to Mrs. Harrison in August, 1896.    At the time the execution was levied , M. H. Ford had not fully  paid off the amount he agreed to pay Moore, and, R. B. Ford, the mortgagor, being dead, M. H. Ford, as administrator of R. B. Ford, was, by consent, made a party to the proceedings, the action revived against him, and another order of sale was procured, and in October, 1895, the land was sold under the decree, and purchased by Moore.    He bid for the land the full amount of the judgment and costs. Deed was executed to Moore by the commissioner in February, 1896, and he in turn conveyed the land to M. H. Ford.    Mrs. Harrison brought this action against M. H. Ford to recover the land, and he set up as a defense the title acquired under the foreclosure sale.    On a trial there was a judgment for the plaintiff, from which defendant appealed.

*Henry Moore,* for appellant.

The mortgage and the mortgagee's rights thereunder were not merged in the decree, so far as to make the lien of the mortgage expire in three years unless the judgment be revived.    45

Ark. 376; 73 Ind. 219, S. C. 38 Am. Rep. 133; 85 Am. Dec. 146; 21 Cal. 103.    *Cf.* 43 Ark. 488; 43 Ark. 519.

*King & Searcy,* for appellee.

Appellant is estopped by taking the deed from R. F. Ford to set up his abandoned claim under the foreclosure decree.   35 Ark. 540; 60 Ark. 491; 33 Ark. 465; 37 Ark. 47; 38 Ark. 571; 39 Ark. 131; 36 Ark. 96; 47 Ark. 317; 48 Ark. 409; 45 Ark. 37; 52 S. W. 671; 54 S. W. 1107.

RIDDICK, J., (after stating the facts).   This is an action of ejectment, where both parties claim title under R. B. Ford, who is admitted by both parties to have been the owner of the land. R. B. Ford mortgaged the land to Henry Moore, and afterwards conveyed it to R. F. Ford.   Mrs. Harrison, the plaintiff, claims title by virtue of an execution sale of the land as the property of R. F. Ford.   The defendant, M. H. Ford, rests his title upon a sale under a decree foreclosing the mortgage given by R. B. Ford to Moore.   As R. B. Ford had mortgaged the land to Moore before he conveyed it to R. F. Ford, and as R. F. Ford was a party to the foreclosure decree obtained by Moore, it is evident that a sale under such decree would ordinarily cut off all interest of R. F. Ford in the land.   It would cut off not only the interest of R. F. Ford, but also the interest of any purchaser or person by virtue of a sale under execution against him, when there was no attachment, and when the judgment upon which the execution was issued was recovered after the rendition of the foreclosure decree.   But counsel for Mrs. Harrison contend that the sale under the decree did not have that effect in this case, for the reason, as they contend, that Moore abandoned his decree, and waived his lien, and that both he and M. H. Ford, his vendee, are now estopped from setting up such decree and sale.   But we see nothing in the evidence to sustain such a contention.   A man may purchase the same land from two different persons, and, if he is sued by a third person, he can rely on either or both of the titles he has purchased. The fact that M. H. Ford had purchased this land from his brother did not prevent him from purchasing it from Moore.   Nor does the fact that he had recorded the deed from his brother estop him from setting up the title acquired from Moore.   But counsel say that the foreclosure decree directed the commissioner to sell on the 14th of December, 1891, unless $100 were paid before that day, but directs that, if such payment was made, the commissioner

should postpone the sale for the remainder of the debt until December 14, 1892. The last-mentioned day having passed without a sale, they contend that the presumption is the decree had been satisfied by the payment of the debt. But under the facts of this case the contention that the decree should be treated as satisfied because the land was not sold on the day named in the decree is, we think, utterly untenable, and is only noticed on account of the somewhat strenuous argument made by counsel in support of it.

The next contention urged by counsel for plaintiff is that the title or lien given by the mortgage was merged in the foreclosure judgment rendered in 1891, and that the lien of this judgment, not having been revived, expired after three years, and that thereupon the judgment of plaintiff, filed in 1892, became a first lien on the land. But, while the note secured by the mortgage and sued on—in other words, the cause of action—was merged in the judgment, so that plaintiff could not maintain another action on the note or mortgage, yet the mortgage lien or title was not merged in the judgment. On the contrary, the object of the suit was to establish that title. All conflicting liens or interests adverse to the mortgage possessed by the defendants in the foreclosure suit were cut off by the foreclosure decree, and the mortgage lien or title was by that decree established as superior and paramount. After such decree Moore still held his mortgage lien or title, but he held it freed from any defects or uncertainty as to the rights of the defendants, these having been determined by the decree. The debt secured by the mortgage was no longer a promissory note, liable to be barred by statute of limitations after five years, but a judgment, which would not be barred until ten years from its rendition. The statute requiring suits to foreclose mortgages to be brought within the period of limitation prescribed for a suit on the debt for the security of which the mortgage was given does not affect this case, for the mortgage has already been foreclosed, and the land sold under the decree in less than five years after it was rendered—long before the decree was barred by the statute, and while the lien of the mortgage was still in force. It results from what we have said that, in our opinion, the purchaser under the foreclosure sale obtained a title superior to that of the purchaser at the sale under execution against R. F. Ford, whose interest in the land was determined by the decree to be subject to the mortgage. Had plaintiff, after obtaining her judg-

ment lien, brought suit in equity to redeem from the mortgage and decree, and to subject the interest of R. F. Ford in the land to her judgment, different questions would have been presented. But this is a suit in ejectment, not an action to redeem or set aside for fraud, and the only question presented is, which has the superior legal title, plaintiff or defendant? We are of the opinion that the title of the defendant is superior to that of plaintiff, and that the circuit court erred in its findings and judgment in favor of plaintiff. The judgment is therefore reversed, and the cause remanded for a new trial.