**RUGG, Admrx v AMBROSE, et.**

Ohio Appeals, 5th Dist, Delaware Co
No. 212. Decided Dec. 8, 1930

Geo. T. Geran, Marion, for Rugg.
Humes & Cupp, Delaware, for Ambrose.

SHERICK, J.

A solution of the question presented calls for a close consideration of the statutes prescribing election and how and when such

shall be made. They are found in §10566 to §10575 GC, inclusive. It appears therefrom that three ways are provided; first, an election may be made in answer to a citation issued forthwith to the widow upon the will's probate, and by the widow electing in writing within the year before the probate judge and after he shall have explained to her the advantages and disadvantages of her inconsistent rights; second, and election may be manifested by a written instrument duly signed, acknowledged and filed in the probate court within the year from the probate of the deceased consort's will; third, in the manner provided in §10573 when the surviving spouse is unable to appear or is a non-resident; To these may be added a fourth way, long recognized by courts of equity, that is, an election may be made in fact by plain and unequivocal acts, with full knowledge of all rights and condition of the estate when such acts are of sufficient duration to show a clear purpose to take under the will or under the law; and this fourth way is recognized in this state, as indicated in the case of **Industrial School v Bates, 90 Oh St 288.** From the agreed facts it is clear in this case that the widow made no election in conformity to anyone of these four recognized ways.

It has been held in this state, in **Bowen v Bowen, 64 Oh St 164** that the issuance of a citation by the probate court to the widow forthwith upon the probate of the will is mandatory, and that the year's limitation begins to run from the date of the service of the citation. This was ordinarily true, but it must now be kept in mind that the most recent expression of the legislature, discloses a different intent, for §10571 now provides, "Whether or not a citation is issued in manner provided by §10566," and "If the widow or widower fails to make such election in person as provided in §10570, or by written instrument as provided herein, within the time limit provided by §10567 and §10568, or within the time limit provided in this section, then it shall be deemed that she or he elected to take under the will and she or he shall be bound accordingly and persons may deal with property of the decedent in accordance therewith."

On the other hand, eliminating the matter of the statutory change, we learn that it has been held that a citation is not necessary in every case, per example, where the will makes no provision for the widow; election in such case being an absurdity. In other jurisdictions where it was provided that the widow failing to elect, took under the will, it has been repeatedly held that an election was not necessary where the will gave all to the widow. The reason is obvious. Such would also be true if the will gave that only which the law provided. It has likewise been frequently held that a citation is dispensable when the widow is mentally incompetent. Specially is this true when such fact is known to the probate court at the date of probate of the will, and is likewise known to her guardian and soon thereafter suggested by him, an officer of that court as in this case, to the probate court, for in such case under the Ohio law the widow could not make an election, neither could her guardian, for §10574 and §10575 GC provide that the probate court shall then make such election. The fact that the court in this instance did not promptly appoint a commissioner and make an election can land no comfort to the appellant by reason of a want of citation, for it is the view of this court for the reasons given, that a citation was not necessary in this particular case; it would have been meaningless and of no avail. And it is not our disposition to question the failure of the probate court to promptly act as prescribed in the last cited sections for he might in good faith have presumed that he should await the filing of an application by the widow's guardian for such action and the facts brought officially to his attention. Certainly he did not contemplate the widow's early demise.

Now, as previously stated, it is contended that the trial court sitting as a court of equity, should have made the widow's election, and that this court, hearing the question before it on appeal, should now make that election, which the trial court refused to do.

It has long been the practice under the common law, that courts of equity would grant relief to persons under disability as wards of the court when they were required to elect between two inconsistent rights; and this doctrine has been applied in some of our jurisdictions to impose upon courts of equity or probate courts the duty of making an election for an insane widow. But we do not understand that this is true in Ohio, as to courts of equity, in view of the fact that the legislature has enacted §10574 and §10575 GC, which abrogates the common law and places that matter within the jurisdiction of the probate court, which is supposed to have no equitable jurisdiction. However, we do perceive that in a proper case a court of equity might interfere to make such an election or to set one aside when made by a court of probate, an example being, where the probate court fraudulently made an election, or that court refused or was financially interested or fraudulently conspired to avoid making an election; but in any such case it would be

an essential prerequisite that the widow be then alive. In the present suit there is no refusal or fraud charged and the widow is dead, and we see no reason for the intervention of a court of equity, unless it be that the Ohio statutes are silent or insufficent to cover the exigency of this case.

It is the policy of the law to place the widow's dower and her interest in her husband's personal property at his decease beyond the power of the husband or others to take from her. And it was likewise the law's policy to fix and define what interest or fraction of her husband's estate the widow was entitled to receive; and this portion the legislature may at any time enlarge or diminish or place a limitation or requirement upon its acquisition, as has been done by §8611 GC, baring dower when the surviving spouse has left the other and dwells in adultery. A further limitation has been placed upon the right of the relict to inherit a portion of the deceased spouse's estate in that by §10503 GC, one of full age, sound mind and not under restraint and having property, may make a will. And it may now be conjectured in view of the recent amendment and changes in §10571 GC, that the legislature places the right to make a will over and above the right of a surviving spouse to inherit a portion of the deceased husband's or wife's estate, as it seems to be now considered in a majority of American States.

And it naturally follows that the rights of the relict to inherit from the deceased spouse is further limited by the provisions of the code pertaining to election and which are now being considered.

True, the right of election is granted to the widow by these sections, which provide a fifth way in which the right may be exercised; but that election must be made in one of the five ways recognized by the law, and within the time prescribed. It has been rightly said that the widow takes not by the bounty of the testator, but by virtue of a contract with him which the law creates and protects; the reciprocal considerations being the relinquishments by the widow of her legal right to dower and share in the personal estate thereby enabling the testator to dispose of his estate without reference thereto, and the price offered by him for this right, consists of the legacy or devise to her. This contract the law makes; and it has an unquestioned right to modify it or limit its enjoyment, or prescribe how the relict may secure and enjoy one or the other of these rights.

The law now provides that when a relict fails to make an election, that he or she shall take under the will. And we believe it to now be the law of this state that the statutory right of a widow to elect not to take under her husband's will must be exercised by her personally in her life time and within the time fixed by law, even though she was prevented by insanity from making such election, and the probate court failed to make the same for her, and that it cannot be exercised after her death by her heirs or personal representatives or by a court of equity except in a proper case as previously indicated.

It was the intention of the legislature to make this right purely personal, and to be exercised within the period of one year. It is not provided that the right shall survive. Page on Wills, 2nd Ed. Vol. 2, Section 1199, says, "On the death of the party who is entitled to make an election, his heirs and personal representatives cannot elect in his place,—If the beneficiary has made no election in his life time, the right which he would have had if he had lived and made no election is the right which passes to his heirs or personal representatives." The court in the Industrial School case supra, in commenting upon these election statutes remarks that there is no sentiment about this law; and it is equally true that the legislature had no concern in its enactment of these statutes of the best interests of the heirs of the widow.

The case of Croziers Appeal, 90 Pa 384, 35 Am. Rep. 666, is similar to the one at bar, the court therein said:

"So long as the lunatic elector lives, the court, as guardian, is invested with the power of choice, but when the fountain dries up in death, all that has life in it dies also. In short, if no election is made by the widow during life, when she is competent to act for herself, or by the court when she is not, the right is defeated in either case, the time and opportunity are past, and it never was intended that any election should be made after her death. It could do her no good, and the good of the others was not in the view of the law makers."

This case has been followed in two other instances in that state, see, In Re Anderson's Estate, 185 Pa 174, 39 Atl 818: In re Fleming's Estate, 217 Pa 610, 66 Atl 874, 11 L R A (NS) 379.

In the case of Williamson v Nelson, Tenn 62 SW 59, it was held:

"The policy of the law giving the widow the right to dissent is, as we think, to make just provisions for her personally, and that its benefits were not intended to extend to her estate or her kinspeople after her death.

It clearly, under all the cases, as we think, requires a dissent expressly, either by the widow or by a court for her, during her life, to fix the status of the property, and to avoid the legal operation of the will. If this was not done before her death, then we think the property would have descended under the will, and that the administrator of the widow could take no interest in it. We see no reason founded on public policy, or natural, justice and equity, that would take this property from the sisters and kinspeople of the testator, and give it to the kinspeople of his widow, who had no claim upon him, either legal, equitable or natural, and we are, therefore, clearly of opinion that the right of dissent is purely personal to the widow, and does not survive, and that, even in cases of insanity or other disability, where the application was not made by or on behalf of the widow before her death, none can be made or maintained for the benefit of her estate afterwards."

See also Nordquist v Sahlborn, Minn 131 NW 323; wherein it was found:

"The right given by §3649, Rev. Laws, 1905, to the surviving husband or wife to renounce the testamentary disposition of property made by the deceased spouse, is personal to the survivor, and does not pass to his or her personal representatives or heirs."

"Such a renunciation not being made by the surviving wife during her life time, though at all times subsequent to the death of her husband insane, cannot be made on her death by the administrator of her estate, though it might, perhaps, during her life, and within the time prescribed by statute, have been made by her guardian, or by the probate court for her."

To the same effect, the following authorities may be added:

Harding v Harding, 140 Ky 277, 130 SW 1098;

Price v Woodford, 43 Mo 247;

Fosher v Guilliams; 120 Ind 172, 22 NE 118;

In Re Gunyon's Estate; Wis 55 NW 152;

Flynn v McDermott; N Y 75 NE 931; 2 L R A (NS) 959;

Re Estate of Melissa Connor; Mo 162 SW 252, 49 L R A (NS) 1108 (1117);

Sherman v Newton, Exr, 6 Gray 307;

Pinkerton, Admin v Sargent 102 Mass 568;

Williamson v Nelson, Tenn 62 SW 59.

It will be found that Ohio is sometimes digested as being opposed to the right of authority on the question at issue, by reason of our court's holding in the case of Milli-

kin v Welliver, 37 Oh St 460, and upon which authority the unreported case of Hayes v Hoyl, 81 Oh St 563, is affirmed. But an examination of these cases, bearing in mind the wording of the election statutes then in force, completely refutes the digesters error.

The Milliken case was decided in 1881, and the statute as it then stood, and upon which the case was decided, appears in 57 O L '30, and it recites that "If the widow shall fail to make such election, she shall retain her dower, and such share of the personal estate of her husband as she would be entitled to by law." It is therefore, apparent that the court correctly followed the statutory law of this state, and did not depart from the prevailing quantum of authority.

In 1910, that court decided the Hayes case; and no doubt the court in that case followed the provisions of the then statute, as it stood amended in 1889, and which appears in 86 O L 188, and which did not change the prior existing law in respect to what a widow should take if she fail to make such election.

It now seems to this court in view of the statute's further amendment, as appears in 1925, 111 O L 510, §10571 GC, that the legislature rather than the courts of this state, has had a change of heart, in that the last amendment now reads, that: "If the widow or widower fails to make such election, in person as provided in §10570 GC, or by written instrument as provided herein, within the time limit provided by §10567 and §10568, or within the time limit provided in this section, then it shall be deemed that she or he has elected to take under the will." And by this amendment it is now clear that the legislature adopts as the law of this state the general accepted rule of the decided majority of our jurisdictions.

Viewing the Millikin case in the light that we view it, we now find it to be in line with the authorities supporting the general rule as contended for, by the defendants in error herein, for it is therein decided, the widow having died before the time had expired in which she could have elected, that, "She alone could elect. It is a personal right. Neither her administrator nor her heirs could make it." And without question, had the law then been as it is now that court would have held that those who claimed under her could only claim so much of her husband's estate as she was entitled to under the will.

We make no attempt to reconcile the reason of the court in Hawkins v Barrow, 15 OCC 141, decided in 1897, with our present views for we note that this case is actually decided upon the fact that the widow,

prior to death had made an election in fact by her conduct. But it is worthy of note that the court stated: "And that without such election, she is remitted to her statutory rights as widow of her husband. And it is clear, too, in such case, that the election must be made by her personally, and cannot be exercised for her after her death by her heirs or legal representatives."

It is therefore, the conclusion of this court that the election statutes of this state, as expressive of the legislative intent, recognize the widow's right of election as a purely personal right to be exercised in her life time by her or for her by the probate court if she be under mental disability, and in any event to be exercised within the year, and that no right of survivorship was intended to be saved to her estate or her heirs; and no election having been made by or for the widow the appellant must fail. It must follow that the same judgment will be entered in this court as was entered in the court below.

Exceptions are noted.

LEMENT, PJ and JUSTICE, J, 3rd Dist, sitting by designation, concur.